## SECOND UNIVERSALIST SOCIETY IN PROVIDENCE v. THE CITY OF PROVIDENCE.

The interest of a religious society in lands leased by them, and upon which they have érected a building, partly occupied by them for religious worship, and partly rented for stores and other purposes — the rents and profits being appropriated exclusively to réligious uses, — is exempted from general taxation by § 2, ch. 37, of the Rev. Stats.; but not from an assessment made upon it for benefits derived from the laying out of a new street, in the vicinity, under the act of January, 1854, entitled " An Act in relation to the laying out, enlarging, straightening, and otherwise altering streets in the city of Providence."

Where a religious society held lands under leases which covenanted that the society should pay all taxes assessed upon the demised premises, and, at the request of the treasurer of the society, the lands, for their interest in which the lessors had before been taxed, were, for the convenience of the society in paying such tax, assessed solely to the society: *Held*, upon an action brought by the society to recover back such tax as illegally assessed, — the same having been paid under protest, — that the society were equitably estopped from objecting to the change of assessment.

Where a lessee voluntarily pays a city street-assessment, duly made against the lessors for their reversionary interest in the demised premises, it cannot be recovered back from the city, although there was no obligation upon the lessee to pay it under the covenants of the lease.

ASSUMPSIT to recover of the city of Providence the sum of $478.50, paid by the plaintiffs under protest, for taxes, as they claimed, illegally assessed against them by the city, which sum included also the sum of $30.33, paid by them for benefits from the laying out of Dorrance Street assessed against Benjamin Barker and Catharine, his wife, lessors of the plaintiffs.

The case was submitted to the court in fact and law; and at the trial it appeared, that the plaintiffs, a religious society, were, at the January session of the General Assembly, 1848, incorpo-

rated by the name of the " Second Universalist Society in Prov-
idence;" that the society in 1848, became lessees of three sev-
eral lots of land which lay in a body at the west corner of
Broad and Eddy Streets in Providence, extending back to Mid-
dle Street, — each of their said leases being for ten years, and
renewable, upon an appraisement of rent every five years there-
after, during the term of one hundred years, and each contain-
ing, amongst other things, a covenant on the part of the society,
that they would " pay all taxes and assessments of every kind,
that should be assessed upon, or payable from, the leased prem-
ises, during the continuance of the lease, or of any renewal
thereof;" that upon these lots the society had built a three
story brick building, with a front of eighty feet on Broad Street,
and extending along Eddy to Middle Street; that with the ex-
ception of a space in the building of forty by eighty feet, and a
vestry of forty feet square, which were used for religious wor-
ship, the building, including the basement, was rented by the
society to various tenants for stores and other purposes at an
annual rent in all, in 1857, of between $2300 and $2400; that
the whole of the rents thus received were applied by the society
to the support of public worship in their said building, and
were insufficient therefor, — the balance being derived from pew
taxes which the society were empowered to assess by virtue of
an amendment to their charter, procured at the January session
of the general assembly, 1852; that prior to the year 1856, the
three lots, holden by the society under the leases aforesaid, had
been solely ·assessed to the lessors, — being lots 147, 148, and
160 on plat No. 20, of the plats of the assessors of taxes in
Providence, — but in that year the treasurer of the society
came to the office of the board of assessors, and requested the
chairman of the board, that, as the society were liable for these
taxes under their leases, they might in future, so that the society
might avail themselves of the customary three per cent. deduc-
tion for prompt payment, be assessed to the society; that the
chairman, hesitating about granting the request, told the treas-
urer of the society that if he would make the request in writing
he would lay it before the board for their decision, and, accord-
ingly, the following written request was handed by the treasurer

of the society to the chairman of the board of assessors, and was by him placed on the files of the board.

" *To the Board of Assessors of the City of Providence.*

" Gentlemen, — You are hereby requested to tax the following lots, viz.: — Plat 20, lot 147, now taxed to Benjamin Barker and wife, Tiverton ; lot 148, now taxed to Thomas Mathewson, Providence ; lot 160, now taxed to Harriet Mathewson, Providence, to the Second Universalist Society in Providence, and I will hold myself responsible for all taxes that may be legally assessed against the same.

" DANIEL ANGELL, *Treas. of the Second Universalist Soc.*
" Providence, July 14, 1856."

Upon this request the three lots were assessed in the year 1856, to the lessees, the society, instead of to the lessors, as before, and the taxes upon them for that year were paid by the society.   In the year, 1857, the general city tax, amounting to $288.60, was assessed upon these lots to the society — together with the sum of $125 for benefits derived by the society as lessees from the laying out of Dorrance Street, in the vicinity, under the act of January, 1854, entitled " An Act in relation to the laying out, enlarging, straightening, and otherwise altering streets in the city of Providence."   These two sums, together with the sum of $34.57, for expenses incurred in advertising and notifying parties interested in the lots, amounting in all to the sum of $448.17, — were, on the 26th day of February, 1859, paid by the society under protest.   On the 10th day of December, 1858, the society also paid to the collector of the city, the sum of $30.33 ; being the sum assessed with interest against Benjamin Barker and Catharine, his wife, lessors of one of the lots holden by the society, for benefits derived by them to their reversion, from the laying out of Dorrance Street.

It was in proof, that the annual rent received by the society from their building had increased since 1857, between three and four hundred dollars.   It also appeared, that when the collector of Providence advertised the lots of the plaintiff for sale for nonpayment of the taxes assessed upon them in 1857, he ad-

vertised for sale, the right, title, and interest of the Second Universalist Society, alone, in said lots.

To recover the above taxes paid by the society to the city of Providence, for 1857, with interest from the time of payment, this action was brought, upon the ground that the same were illegally assessed, and the payment thereof extorted by force of the collector's warrant.

*Payne*, for the plaintiffs, relied upon the exemption from taxation, found in ch. 37, §§ 1, 2, of the Rev. Stats, of "houses for religious worship," "and the land used in connection therewith so far as the same is held, occupied, and used for, and the rents and profits thereof are applied to, religious" purposes.

He called attention to the advertisement of the collector as shewing that the interest of the society, and not of their lessors, was what was taxed in 1857, and was to be sold for non-payment of the taxes assessed on the lots in that year.

He denied that the society were equitably estopped by the request of their treasurer in 1856, that the lots should be assessed to them instead of their lessors, from contesting the tax of 1857. The request was made without authority from the society, to a board of annual election, and with regard to taxes assessed under the law, as it existed in 1856, and before the revision of 1857. It did not profess to bind the society, but proffered only the personal responsibility of the treasurer for the payment of the taxes, if they should be assessed against the society, instead of against their lessors.

*Clarke*, city solicitor.

That portion of the plaintiffs' building, which was appropriated to other than religious purposes, is not exempted from taxation; and as the plantiffs have handed in no list of their ratable property, if any portion of their property is ratable, they cannot recover in this action the amount in which they are over-taxed. Besides, as the lots were taxable to their lessors, and the assessment of them to the society was procured by their treasurer solely for their convenience, the society is equitably estopped from contesting the tax.

The general tax act has no relation in its exemptions to taxes assessed for benefits derived to adjacent owners from

the laying out of new streets or altering of old ones, under the special act of 1854 upon that subject, applicable only to the city of Providence. But if it had, so far as the $30.33 assessed for benefits from the laying out of Dorrance Street, upon the society's lessors, Barker and wife, is concerned, the plaintiffs voluntarily paid that amount for their landlords, and cannot recover it back from the city.

[Mr. Justice *Brayton* suggested, that as this tax was a lien upon the lots, and they were described in the assessment by their numbers on plat No. 20, of the assessors of Providence, so that they can be identified, the tax might still be collected out of the lots, as within the equity of the ninth section of chapter thirty-eight of the Rev. Stats. which provides for such collection out of real estate assessed by mistake to a person not the owner.]

*Payne*, for the plaintiffs, replied, that by the collector's advertisement of sale, it appeared that it was the interest of the *lessees* which had been taxed, and not of the lessors, since the former only was advertised for sale for the payment of the same.

*Clarke*, for the city, answered, that the lots for which the assessment was made were accurately described by reference to the assessor's plat, and were assessable by law to the owners, the lessors; and although, if the collector had sold the plaintiffs' interest in them for the tax, the sale might have been avoided, his mistake did not tend to prove that only the interest of the lessees had been assessed, the contrary of which had been proved by the chairman of the board of assessors.

AMES, C. J. The interest of the plaintiffs in these lots was undoubtedly exempted from the general tax of the city of Providence, in 1857, by force of sect. 2, ch. 37, of the Revised Statutes, as an interest in a house of religious worship and in land connected therewith, the rents and profits of which were applied to religious uses. In fact, the evidence shows, that the city of Providence never attempted to tax it; but prior to 1856, assessed their tax for these lots, occupied by the plaintiffs, to their landlords alone, and, as it must be presumed, in proportion to and for their valuable rent-paying interest in the same.

In that year, for the convenience of the plaintiffs, who were liable under their leases to pay the taxes upon these lots, and at the request of their treasurer, the assessment was changed from their landlords to the plaintiffs; and no notice having been given to the assessors that the motive which influenced the request had ceased to operate, the assessment for the lots was again made to the plaintiffs in 1857.

If, after this, the society should be permitted to evade payment of this tax upon the ground that it should have been assessed against its lessors, it would be permitted to commit a fraud; and we do not think that religious societies should be allowed to commit frauds, even for the sake of evading taxes.

It was answered to this view of the case, that the treasurer of the society had no authority, by virtue of his office, or communicated to him by the board of trustees, to invite such a change, and that the assessors had no authority to make it; and that as the request was made to a board of annual election, it should be construed to apply only to the current year, especially as since the request was made the tax-act has been amended. As to the first branch of this reply, the proof is, that the treasurer, who was also a trustee, paid the tax for 1856, for which he had procured the change of assessment. By the third section of article third of the by-laws of the society, the treasurer is to pay out the money of the society as directed by a vote of the board of trustees, unless otherwise ordered by a vote of the society. The matter stands then in this predicament: that the treasurer either has a general power to pay the debts of the society, subject to the direction of the board or of the society, — which would carry with it a power to arrange previously for the most economical mode of payment, which was all that was effected by this change, — or, that the above by-law forbids him to make any payment without a vote of the board of trustees or of the society. Now the tax of 1856, the change of assessment of which he had procured, was, in fact, paid by him, and as we must presume, in the absence of proof to the contrary, with the sanction of the trustees, which would be tantamount to a sanction of the change of assessment. As to the absence of right in the assessors, upon such a request, to make the

change, we apprehend that it has nothing to do with the question. The change was in fact procured by the treasurer of the society from the assessors; and whether the latter ought to have complied with the request of the former or not, the city ought not to be deprived of any portion of its tax by such practices upon the officers appointed by law to assess it. The board was a standing one, though its members were of annual election. The assessment requested to be changed was of the landlord's tax, which the alteration of the law did not affect, and could not have been supposed to affect; and the request, which was required to be in writing, was placed upon the files of the board, and, as the proof is, did actually induce the board, as it well might, there being no notice to the contrary, to make the assessment in 1857, as they had done, upon the same request, in 1856. The change of assessment thus procured was injurious to no one, was convenient to, and caused by the plaintiffs; and we should be doing serious injury to the cause of public morals if we did not hold them estopped from objecting to it until in some form the request had been withdrawn.

The assessments paid by the plaintiffs for benefits from the laying out of Dorrance Street, and which are sought to be recovered in this action, fall under a different consideration. They were not collected by virtue of the general tax-act, nor are the plaintiffs privileged from them by its exemptions. Such assessments represent, on the theory of the special act which authorizes them, values received from a public improvement, by the estates assessed for it; and there is no reason why a *religious* society should not pay the just price of a special value thus conferred upon its property, as well as any other society or individual. We are happy to learn from the evidence, that in compensation for this assessment of $125, made in 1857, the annual rents of the plaintiffs have, since that time, increased, and probably from the laying out of Dorrance Street, some three or four hundred dollars.

These remarks apply to the assessment for this improvement laid upon the leasehold interest of the plaintiffs. As to the assessment of $30.33, made upon the reversionary interest of Benjamin Barker and Catharine his wife in one of the lots

leased to the plaintiffs, and which they seem to have paid, there is still less ground for their recovering it. For aught that appears, it was properly assessed to Barker and wife, and was not claimed by the city, through their collector, of the plaintiffs. The plaintiffs were under no obligation, it is true, to pay it under their covenant to pay taxes contained in their lease from the Barkers, as decided by this court, at the last term, in the case of *Horace T. Love & wife* v. *George A. Howard,* supra, p. 116. It must be taken as a voluntary payment to the city, whose due it was, made by the plaintiffs for their landlords; and for that reason cannot be recovered back.

*Judgment for the defendants for their costs.*